Letcher *et al.* v. Morrison.

Isaac A. Letcher, William Hadley *et al.*, Plaintiffs in Error, *v.* James L. D. Morrison, Defendant in Error.

ERROR TO MADISON.

After a notice has been given to the administrator of a deceased debtor, of the existence of a judgment against the decedent, in accordance with Sec. 3, Chap. 47, Rev. Stat., the judgment creditor may issue an execution, and also an *alias* or *pluries*, without further notice.

Morrison purchased a piece of land under an execution against James Duncan, and filed his bill to set aside conveyances which vested the title to the land in John Duncan, alleging them to be fraudulent. Subsequently the land was sold by the administrator of John Duncan, under an order of court, as his property. Morrison received the proceeds of this sale for a claim which he held against the estate of John Duncan. *Held*, that this did not estop Morrison from asserting his title to the land.

This bill was filed by defendant in error, December 31, 1852, and sets forth that Edward Norton, on the 14th day of April, 1842, recovered a judgment in the St. Clair Circuit Court, against James Duncan, since deceased, and Rescarick Ayres, for $2,000. That just previous to the recovery of said judgment, and during the existence of the indebtedness, Duncan, with the intent to defraud said Norton, on the 22nd day of December, 1841, confederating with Isaac A. Letcher, conveyed to him the south-east quarter of Section No. 20, except twenty-six acres out of the south-west corner of the said south-east quarter, containing 133 83-100 acres; also, the north-west quarter of Section 28, except five acres out of the south-east corner, containing 155 acres—both in Township 3 north, Range 8 west, in Madison county, Illinois—upon the expressed consideration of three thousand two hundred and twenty-five dollars.

Bill charges, that in fact there was no consideration paid by Letcher to Duncan; that the conveyance was fraudulent; that Letcher did not take possession of said lands, and never exercised any acts of ownership over the same, except to place his deed on record; but that Duncan, the grantor, up to the time of his death, retained possession, and used the lands for his own benefit.

That on the 21st day of January, 1845, and while said judgment was in full force, etc., the said James Duncan and Isaac A. Letcher confederating with one John Duncan, (a brother of James, and who lived with, and who was wholly dependent upon the bounty of James, and who was destitute of any means), the said Letcher, at the solicitation of James and John, executed a deed to John for the said premises,

upon an expressed consideration of twenty-five hundred dollars.

The bill charges, that no consideration was paid by John to Letcher; that the conveyance was make to defraud said Norton; that John never exercised any authority or control over said premises, until after the death of James, except that he resided thereon as a member of the family of said James Duncan.

That James Duncan departed this life, intestate, July 14, 1846; that Charles Cook, public administrator of Madison county, administered upon the estate of James Duncan; that after the death of James, John occupied the premises to the time of his death, January 30, 1848; that letters of administration were duly granted to William Hadley on his estate.

The bill further charges, that various writs of *fi. fa.* were issued upon said judgment; and a sufficient sum of money made to reduce the amount upon the judgment to the sum of $737.63, with costs; which amount was due September 23, 1850, the date of the sale hereafter mentioned; that there was no other property or estate out of which the amount due on said judgment could be made.

That at the time of issuing the *fi. fa.* of date June 17, 1850, more than one year had elapsed since the death of the said James; and that said Norton had given notice in writing to the said Cook, administrator, for more than three months, of his intention to sue out a *pluries.*

That on the 17th day of June, 1850, execution issued from the clerk's office of the Circuit Court of St. Clair county, directed to the sheriff of Madison county, and was by him levied on the lands which the said James Duncan had, as in bill stated, fraudulently conveyed to the said Letcher, as the property of the said James; that said lands were sold on the 23rd day of September, 1850, to the defendant in error,—the south-east quarter of Section 20, containing 133 83-100 acres, for the sum of five hundred dollars, and the north-west quarter of Section 28, for the sum of two hundred and thirty-seven dollars and thirty-seven cents, being the amount then due on said judgment; certificate executed; and the lands not having been redeemed, the sheriff of Madison county executed and delivered to him a deed therefor, May 11, 1852.

The bill further charges, that since the recovery of the said judgment, the said Rescarick Ayres has not had property or estate out of which the said judgment could have been made; and that he has refused to pay the amount due upon said judgment, or any part thereof.

The bill further charges, that Norton was unable to collect the whole amount of said judgment, except in the manner set forth in the bill; that personal estate of James Duncan was insufficient.

The bill prays, that the said deeds from James Duncan to Isaac A. Letcher, and from Isaac A. Letcher to John Duncan, may be set aside and esteemed for naught; and that the title be vested in defendant in error.

At the August term, 1853, defendants filed their demurrer to the bill, which was sustained, and leave given defendant to amend.

The answer of Mary Metcalf, disclaims all interest in the property mentioned in the bill; had sold all her interest in the estate of her brother, John Duncan, previous to the filing of the bill of complaint.

The answer of Isaac A. Letcher, believes it to be true that Norton obtained judgment as in the bill set forth; admits that James Duncan conveyed to him the tracts of land in the bill described, and at the time there stated. The conveyance was for a full and valuable consideration—the same as set forth in the deed; that at the time of the conveyance, he was a man of means, worth at least the sum of ten thousand dollars, and could on short notice have raised the sum of thirty-two hundred dollars. That the consideration of the deed from Duncan to himself ($3,225), was made up as follows: As early as the year 1828, he commenced advancing money to James Duncan, and from that time to 1841, he continued to make advances to him, and became liable for certain debts of Duncan to various persons—to Edward Chouteau of St. Louis, since deceased, Joseph Sanberh, then of St. Louis, now of Quincy, Illinois, John O'Blennis of St. Louis, John Darniel of St. Louis, and William Atkins of Madison county—which he paid for said Duncan. That at the date of said deed, Duncan owed him about twenty-five hundred dollars, and he was liable, as indorser of notes of Duncan, to an amount of some eight hundred dollars more, which he afterwards paid. That the consideration of $3,225, expressed in the deed, was *bona fide,* and actually paid by him to the said Duncan, and to other persons for him. Denies that the conveyance was made to him by Duncan to defraud Norton, or any other person; but to secure to him a *bona fide* debt. He further states, that Duncan paid him rent while he owned the lands; paid in corn, pork, and other articles of personal property. That he made the conveyance to John Duncan for the true and full consideration of twenty-five hundred dollars, which said John Duncan paid to him. He denies all fraud or combination with James or John

Duncan, to defraud said Norton; that on his part the transaction was *bona fide* and honest.  That he was willing to sell said lands for $2,500, and did so, as it certainly was his right, and received the money, and personal property which was equivalent to money, from the said John Duncan.  That he did not know James Duncan in the transaction.  Is ignorant of proceedings under judgment; supposed judgment was long ago satisfied.  Knows nothing of the pecuniary ability of Ayres.

The answer of William Hadley admits the recovery of judgment by Norton against Duncan and Ayres.  Admits conveyance by James Duncan to Letcher for $3,225; denies that it was fraudulent.  Admits that James Duncan resided on one of the tracts of land after the conveyance; but whether as tenant paying rent, or in what capacity, is ignorant.  Admits the conveyance from Letcher to John Duncan; denies that the conveyance was made without consideration, or made to defraud Norton.  States that John Duncan after the conveyance to him, exercised acts of ownership over the lands; that he cultivated some part of the land himself, and rented parts to others.  Denies that John was wholly dependent upon the bounty of his brother James; and denies that he was destitute of any means or pecuniary ability; believed that John had money; denies all combination between Duncan and Letcher to defraud Norton; admits that James Duncan departed this life at the time stated in the bill, and that Charles Cook, as public administrator, took out letters upon his estate.  He admits that John Duncan occupied and enjoyed the premises from the time of his purchase until he died, as his own.  He admits that letters of administration were granted him on the estate of John Duncan; that, as such administrator, he obtained an order from the Circuit Court of Madison county, at the —— term, 1852, to sell the lands belonging to John Duncan, deceased.  That under said order, he sold the south-east quarter of Section 20, Township 3 north, Range 8 west, at public auction, to Jonathan Duncan, for $800, and has made him a deed therefor—fully believing, and now believing, that the fee simple title was in his intestate..  He further states, that he has been informed, and verily believes, that the judgment recovered by said Norton, was fully paid and satisfied long before the sale made by the sheriff of Madison county to the defendant in error, and that fact was known to him before he made his purchase.  He further states, that on the 15th day of March, 1849, James Bishop, one of the heirs of John Duncan, became indebted to him in the sum of $85, and to secure the same, executed a mortgage on all his

interest in said estate, recorded March 20, 1849; and Robert E. Duncan, another of the heirs, was indebted to him in the sum of $65, and executed to him a mortgage on all his interest in said estate, of the same date, recorded March 20, 1849. That said debts have not been paid, or any part thereof, and insists upon superior lien.

The answer of Charles Skinkle states, that he purchased from Jonathan Duncan all his interest and title in the lands described in the bill, for a valuable consideration without notice.

To which several answers replications were filed.

Decree *pro confesso*, as to the defendants failing to answer. The proof sustained the allegations of the bill.

The decree, after reciting the exceptions taken to various depositions, decreed that the exceptions taken by the complainant to the deposition of Isaac A. Letcher be sustained; that the exceptions of the defendants to the answer of John Keenan to the 26th direct interrogatory be sustained; and the remaining exceptions of said defendants are overruled. That the deeds from James Duncan to Isaac A. Letcher, and from said Letcher to John Duncan, as set forth in the bill, be taken and deemed as fraudulent and void, as against the said complainant, and those claiming title through or under him. That the title to the said property be vested in the complainant, and the defendants be forever barred, etc. Decree for costs against defendants. By agreement, cause to be heard at Springfield.

The receipt of Mr. Kœrner, referred to in the opinion, is as follows:

"Received, April 4, 1854, of William Hadley, administrator of the estate of John Duncan, deceased, the sum of two hundred and eighty-two dollars and fifty cents, being in full allowance of claim in the probate court of Madison county against said estate, with interest to date. The money being the proceeds arising from the sale of the following described tract of land: the south-east quarter of Section 20, Town 3 north, Range 8 west. Sold under an order of the Circuit Court of Madison county, as the land of said John Duncan, deceased.

GUSTAVUS KŒRNER,
Attorney for James L. D. Morrison."

H. W. BILLINGS, for Plaintiffs in Error.

J. AND D. GILLESPIE, for Defendant in Error.

CATON, C. J.* The transfer from James Duncan to Letcher and from him to John Duncan, was so manifestly fraudulent, that we shall waste no time in discussing the evidence on that subject.

Was it necessary that a new notice should be given to the administratrix whenever an alias or pluries or subsequent execution was taken out? Section three, of chapter forty-seven, Rev. Stat., declares it shall be lawful to issue execution against estates of deceased persons; "*Provided, however,* the plaintiff or plaintiffs in execution, or his or their attorney, shall give to the executor or administrator, if there be any, of such deceased person or persons, at least three months' notice in writing, of the existence of such judgment, before the issuing of execution." We can find nothing in the language or the reason of this statute requiring more than one notice, no matter how many executions may be issued for the collection of the judgment. The statute does not even require the creditor to state in his notice, that he intends to issue an execution upon the judgment; much less to state the time when he will issue it; but all that is required, is to notify the administrator of the existence of the judgment. The object of the law evidently was, to prevent the creditor from collecting his judgment by execution, while the administrator was ignorant in fact of the existence of the judgment. But after that fact was made known to him, in the mode required by the law, the judgment creditor has placed himself in the same position of right, as if the judgment debtor were still living, and the administrator is bound to take notice of everything that is thereafter done, which the debtor himself would be required to notice if living.

The only remaining question is, whether the receipt given by Kœrner to the administrator, for the plaintiff, is an estoppel upon him. We do not think that even if this receipt had been given by Morrison himself, well knowing that the money had been raised by the administrator of John Duncan by the sale of this very land as the estate of John Duncan, that it would estop Morrison from setting up his claim to it. Had Morrison induced the administrator to sell it, and induced the purchaser to buy it, as the estate of John Duncan, then indeed would a court of chancery forever shut his mouth, so that he should never assert his claim to it, by reason of such a fraud practiced on the purchaser. But so

---

* NOTE.—Mr. Justice Breese did not sit at the hearing of this case, or take any part in the decision of it.

far as this record shows, he knew nothing of this sale, at least till after it was completed, and the purchase money had passed into the hands of the administrator, as a part of the assets of the estate. It thus became a part of the general fund, and had to be distributed to the creditors of the estate generally. It does not appear even that it was sold specially to pay this debt, and if it did, the law says to the purchaser, *caveat emptor*.

But more than this, Kœrner was only authorized to receive this money generally for Morrison, and to give a general receipt therefor, and there is not a shadow of pretense for saying that he was authorized to sign any paper which should operate as a release of his interest in, or claim to this land, which, for aught that appears, was quite foreign to his mind when he requested Kœrner to collect this money for him.

The judgment must be affirmed.

*Judgment affirmed.*