BEATRICE FITCH *et al.*

*v.*

JOSEPH H. GRAY *et al.*

162    337
f96a   1442

*Filed at Ottawa March 28, 1896—Rehearing denied October 9, 1896.*

1. PUBLICATION—*for execution against lands of deceased person—sufficiency of affidavit.*  An affidavit for publication of notice to obtain execution against the lands of a deceased person, under the statute (Laws of 1875, p. 86,) requiring, in case there is no executor or administrator, at least three months' notice to the heirs of the existence of the judgment or decree, may state the residence of the heirs on information and belief.

2. EXECUTIONS—*may issue against lands of decedent at later day than named in notice.*  An execution against the estate of a deceased person may issue at a date later than that stated in the notice of intention to issue it.

3. SAME—*notice of, against lands of deceased person, need not be signed.*  A notice that an execution will be issued against the estate of a deceased person need not be signed by any person.

4. PLEADING—*when leave to file new bill may be refused.*  Leave to file a new bill as a substitute for the original bill with its various amendments, and a supplemental bill, is properly refused where many amendments have been allowed, demurrers thereto passed upon, an order dismissing the bill been set aside, a supplemental bill filed, and demurrers sustained to the bill as amended and the supplemental bill.

APPEAL from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

Appellants filed their bill to remove clouds from their title to lots 176 and 180, in a subdivision of the east half of the south-west quarter of section 30, township 38, north, range 13, east of the third principal meridian. The clouds alleged are certain sheriff's deeds and conveyances thereunder, and certain tax deeds, etc.  The bill also seeks to set aside a certain conveyance made by the appellants which is alleged to have been fraudulent and void.

One John Fitch, in his lifetime, was seized in fee of lots 176 and 180.  It appears from the bill that Fitch

died intestate at Nettleton, Kansas, on July 20, 1878, leaving the complainants, his children and only heirs; that no administration was ever had upon his estate; that at the time of his death there was a judgment against him in the Superior Court of Cook county in favor of one Coates, recovered on February 25, 1875, which had been subsequently assigned to one Gray; that more than twelve months after the death of Fitch, Gray made affidavit of the facts aforesaid in the cause where the judgment was rendered, stating the names of the heirs of Fitch and where he believed them to reside, for the purpose of having a publication of a notice of the judgment made by the clerk, so that an execution could issue on the judgment; that the clerk of the court did publish such notice, and sent a copy thereof to each of said heirs · in apt time; that thereafter execution issued upon said judgment, which was levied upon two lots in which Fitch, at the time of his death, was interested and upon which there were tax titles; that thereupon sale of the lots was made under the execution and sheriff's deeds issued, and that certain appellees, by *mesne* conveyances, acquired title to said lots under the said tax titles and execution sale. The bill alleges the affidavit on which publication of notice was had was on information and belief of the assignee of the judgment as to the residence of appellants, and did not describe the judgment as to date and amount, nor how much had been paid thereon, and did not show any personal demand was made on the appellants, as heirs of John Fitch, for payment of the same; alleges a conveyance by appellants to one Ulrich for a consideration, which deed, it is alleged, was procured by undue and improper influence. It is not alleged the appellants were the owners of the lots at the time of filing the bill.

To this bill Ulrich and one Smith and the city of Chicago filed answers and other defendants filed demurrers. The demurrers being sustained the appellants took leave

to amend their bill. The amendment was filed, alleging defects in certain tax deeds, and charging that the published notice, for the purpose of causing an execution to issue, was made, the first insertion on June 12, 1880, and the last on July 3, 1880, and set forth an execution would be issued on October 4, 1880, but that in fact no execution issued until December 13, 1880, and alleging that upon diligent inquiry the place of residence of appellants could have been ascertained. The amendment made additional party defendant, etc.

To the bill as amended demurrers were filed and sustained. Again appellants asked leave to amend their bill, and that amendment set forth more specifically the publication of the notice, when the terms of court commenced, the time when the notice stated an execution would be sued out and when it actually was sued out, and averred there was no notice of publication filed until December 10, 1880, and there was no jurisdiction to issue execution on December 13, 1880, etc. To this bill as thus amended demurrers were interposed and sustained, and leave was given to amend the bill, and it was amended by dismissing the bill as to Ulrich and striking out all averments as to him. To this bill as thus amended answer was filed by the city of Chicago and demurrers interposed by the other defendants. These demurrers were sustained and the bill dismissed for want of equity. Thereupon appellants filed a supplemental bill, in which it was recited that by the conveyance made to Ulrich, and under which he had made trust deeds upon the property so conveyed, such trust deeds had been released and destroyed and Ulrich reconveyed the premises to appellants. It is further stated that Gray, who held under the sheriff's deed, conveyed a part of said premises, which, by *mesne* conveyances, came to Catherine Ryan, who, it is alleged, is a necessary party. By leave of court the answer of the city of Chicago was withdrawn and it filed a demurrer. Upon motion of complainants to set aside

the order and decree theretofore entered, the motion was allowed and leave to file a supplemental bill granted, and the demurrers of the several defendants to the amended bill were ordered to stand as demurrers to the amended and supplemental bills. Thereupon complainants asked leave to file their amended and supplemental bill as a substitute for the original bill, its several amendments and the supplemental bill, which motion was denied. Again the demurrers were sustained, and the amended and supplemental bill was dismissed for want of equity appearing on the face of the bill. Complainants prayed an appeal, and assigned as error the sustaining the demurrer and dismissing the bill.

CONSIDER H. WILLETT, and HENRY W. MAGEE, for appellants:

At common law, after the death of a judgment debtor no execution could issue. The judgment could only be revived by *scire facias. Meyer* v. *Mintonye,* 106 Ill. 414; *Ransom* v. *Williams,* 69 U. S. 313; *Laflin* v. *Herrington,* 16 Ill. 301.

The affidavit upon which the execution issued, being made upon information and belief, conferred no authority upon the clerk to issue the execution. Rev. Stat. chap. 77, sec. 39, and chap. 22, secs. 11, 12; *Bowen* v. *Slocum,* 17 Wis. 181; *Manly* v. *Headly,* 10 Kan. 88.

The mailing of the notices to a place where the heirs did not reside was a nullity. *Smith* v. *Huntoon,* 134 Ill. 29; *Mining Co.* v. *Marsano,* 10 Nev. 270; *Likens* v. *McCormick,* 39 Wis. 313; *Williamson* v. *Brown,* 15 N. Y. 354; *Lewis* v. *Bradford,* 10 Watts, 67; *Yorke* v. *Yorke,* 3 N. Dak. 343.

The notice was void because it was not signed by the judgment creditor and his assignee. Rev. Stat. chap. 77, sec. 39.

Void execution and judicial sales may be collaterally attacked. *Wallace* v. *Swinton,* 64 N. Y. 188; *Gibson* v. *Roll,* 30 Ill. 172; *Haywood* v. *Collins,* 60 id. 328; *O'Farrell* v. *Heard,* 22 Minn. 189; *Campbell* v. *McCann,* 41 Ill. 45.

The bill is not multifarious. It is a bill to clear complainants' title from clouds of said sheriff's and tax deeds. *Montgomery* v. *Brown*, 2 Gilm. 581; *Ryan* v. *Shawneetown*, 14 Ill. 20; *Finch* v. *Martin*, 19 id. 105; *Sherlock* v. *Winnetka*, 59 id. 589; *Sapp* v. *Phelps*, 92 id. 588; *Sims* v. *Adams*, 78 Ala. 395; *Lynch* v. *Johnson*, 2 Litt. 98.

AUGUSTUS N. GAGE, and BAYLEY & WALDO, for appellees.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

There are but four questions presented on this record which it will be necessary for us to notice: First, whether an affidavit on which to base publication of notice for causing an execution to issue may state the residence of the heirs based on information and belief; second, whether, on a published notice of an intention to have an execution issued on the 4th of October, 1880, an execution could issue at a later-date; third, whether the notice would be valid when published without being signed by any party; and fourth, did the court err in refusing leave to file a bill as a substitute for the original bill, with its various amendments, and the supplemental bill.

Section 39 of chapter 77, as amended in 1875, (Hurd's Stat. 1889, p. 845,) provided that when a person shall die after the rendition of judgment against him is obtained in a court of record, "execution may issue against the real estate of such deceased person" without reviving the judgment against his heirs or legal representatives, provided that no execution shall issue until after the expiration of twelve months from his death; and no sale shall be had on such execution until the person in whose favor the judgment is sought to be enforced shall give to the executor or administrator, or, if there be neither, to the heirs of the deceased, "at least three months' notice

of the existence of such judgment or decree before issuing execution or proceeding to sell, which notice shall be in writing when the parties required to be notified reside or may be found within the State and their place of residence known, otherwise publication notice shall be given in the manner directed for chancery proceedings in sections 12 and 13 of an act entitled 'An act to regulate the practice in courts of chancery,' approved March 15, 1872."

If there is an administrator or executor, and he resides in this State, the only notice required to be given is to be given by the person in whose favor it is sought to enforce the judgment against such executor. If there is no executor, then the notice is to be given to the heirs if they reside in the State, and the only provision in relation to the notice is, that it shall be given at least three months before taking out the execution, and all the notice is required to contain is a statement of the existence of such judgment. If, however, the parties do not reside in the State, then there shall be a publication notice made in accordance with the provisions of the Chancery act for giving notice by publication,—that is, by sections 12 and 13 of chapter 22 of the statute.

The affidavit of Gray, the assignee of the judgment, sets out the facts upon which to base the publication of notice. It states he was the owner of the judgment; that John Fitch died on the 20th of July, 1878, at Nettleton, Kansas; that more than twelve months had since expired; that there is no executor or administrator of the estate, to his knowledge or belief; that he left him surviving the appellants, "each of whom, as this affiant is informed and believes, lives without the State of Illinois, and cannot be served with personal, written notice of the existence of the judgment in the said above entitled cause, as provided by section 39, chapter 77, of the Revised Statutes of the State of Illinois of A. D. 1874, as amended by the act of the legislature of the State of Illinois approved April 2, A. D. 1875; and this affiant is

informed and believes that the aforesaid children of the decedent reside at Nettleton, in the State of Kansas; and affiant further says that he is informed and believes that the above named children of John Fitch are all the heirs and personal representatives of the said John Fitch." Upon this affidavit notice was published by the clerk as the statute provides, and it is contended by the complainants that the notice was erroneous because it stated the execution would issue on October 4, 1880, and that the execution was erroneous because it was not issued on that date, and that the notice was defective because the affidavit upon which it was issued stated that each of the appellants, "as this affiant is informed and believes, lives without the State of Illinois, and cannot be served with personal, written notice of the existence of the judgment, * * * and this affiant is informed and believes that" they reside at Nettleton, in the State of Kansas.

An affidavit made by an agent of the plaintiff on which to base a writ of replevin, which stated he believed the plaintiff was the owner of the property about to be replevined, was held insufficient in *Frink* v. *Flanagan*, 1 Gilm. 35. An affidavit made by an agent of the plaintiff on which to base a writ of attachment, which stated the affiant was informed and believed the defendant was indebted to the plaintiff, etc., was held insufficient in *Dyer* v. *Flint*, 21 Ill. 80.

This court had before it for consideration an affidavit on which to base publication of notice to non-residents under the Chancery act, in *Rowand* v. *Carroll*, 81 Ill. 224, and in commenting on the *Frink case* and *Dyer case* above, and distinguishing them from the case under consideration, said (p. 227): "These decisions were upon the ground that the respective statutes in those cases required a positive statement of the ownership and indebtedness to be made in the affidavit. There is a difference, in this respect, in the language of the statute here involved. Its language is, that the petitioner shall file 'an affidavit

showing that any defendant resides or hath gone out of this State.' It does not require that the affidavit shall contain a positive statement of the fact of non-residence, etc., but that there shall be filed an affidavit showing such fact. An affidavit upon information and belief is a mode of showing such fact, and does show it, in that mode. We think the difference in the phraseology, in this respect, of the statutes may well admit a difference of construction, and we are inclined to sustain the affidavit in question as being sufficient. That a defendant resides or has gone out of the State is a fact which cannot be expected,' in most cases, to be known by one about to commence a suit except on the information of others, and where the fact is not to be supposed to rest in personal knowledge, but to depend upon the information of another, there would seem to be no essential difference in swearing to the fact in terms of absolute assertion or upon information and belief. Perjury may be assigned on an affidavit that one is informed and believes as to a fact, as well as where he swears positively to the truth of the fact. In neither case would mere disproof of the fact, as that the defendant did not reside or had not gone out of the State, be sufficient to make a case of perjury unless the oath was willful and corrupt." The same principle is sustained in *Hannas* v. *Hannas*, 110 Ill. 53.

An affidavit on which to base notice of publication in chancery may be made on information and belief. The notice to be given non-residents under the Chancery act is to be given by the clerk, based on a sufficient affidavit, and the notice is not required to be signed by a party in interest. Nor is it necessary to state in the affidavit or notice when the judgment will be issued. A somewhat similar question was before this court in *Letcher* v. *Morrison*, 27 Ill. 209, where it was said (p. 214): "We can find nothing in the language or the reason of this statute requiring more than one notice, no matter how many executions may be issued for the collection of the judgment.

The statute does not even require the creditor to state in his notice that he intends to issue an execution upon the judgment, much less to state the time when he will issue it, but all that is required is to notify the administrator of the existence of the judgment.  *  *  *  But after that fact was made known to him in the mode required by the law, the judgment creditor has placed himself in the same position of right as if the judgment debtor were still living, and the administrator is bound to take notice of everything that is thereafter done which the debtor himself would be required to notice if living."

Although the affidavit stated the execution would be issued on October 4, 1880, and was not issued until a subsequent day in December, yet as it was not necessary to state in the notice when it would be issued the fact that it was not issued on the day stated was immaterial.

The court had allowed many amendments to the bill and passed on demurrers thereto, had set aside an order dismissing the bill and allowed a supplemental bill filed, and then sustained demurrers to the bill as amended and to the supplemental bill.  Complainants then sought to embody the original bill, with the various amendments, and the supplemental bill, in a new bill as a substitute.  To refuse leave to do this was not error.  It was an effort to put the pleadings in a shape to have the court again consider them on demurrer, which was very properly refused.

By the sale under execution, and deeds thereunder, all the interest of the complainants passed from them, and it is unnecessary to consider the other questions, as the complainants are not erroneously affected.

We find no error in the record, and the decree is affirmed.                                    *Decree affirmed.*